IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Maurice Dunbar,<br><br>                           Plaintiff,<br><br>v.<br><br>Nurse Fuller, Evans Correctional;<br>SCDC Director, Headquarters; and<br>Ms. Smith, SCDC Medical, Evans<br>Correctional,<br><br>                           Defendants. | Civil Action No.2:11-cv-01620-JFA-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

       The Plaintiff, a state prisoner proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Plaintiff's Motion for Summary Judgment and Request of Conference (Dkt. No. 36) and Defendants' Motion for Summary Judgment (Dkt. No. 37).

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

       The Plaintiff brought this action on or about June 14, 2011. (See Dkt. No. 1.) On or about November 30, 2011, Plaintiff filed a Motion for Summary Judgment and Request of Conference. (Dkt. No. 36.) Defendants filed a Response in Opposition (Dkt. No. 42), to which Plaintiff filed a Reply (Dkt. No. 45).

       On December 12, 2011, Defendants filed a Motion for Summary Judgment. (Dkt. No. 37.) By order filed December 13, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 38.) On or about

January 3, 2012, the Plaintiff filed a response opposing Defendants' Motion for Summary Judgment. (Dkt. No. 47.)

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at Allendale Correctional Institution, alleges claims pursuant to 42 U.S.C. § 1983, for events that allegedly occurred while he was incarcerated at Evans Correctional Institution ("ECI"). (See Dkt. No. 1 at 3 of 5.) Plaintiff alleges that in December of 2010, he was transferred from Kirkland Correctional Institution ("KCI") to ECI, and that once at ECI, Plaintiff "began complaining to medical that something was wrong with [his] body." (Id.) According to Plaintiff, although policy indicates that sick call is to be available Monday through Friday, sick call at ECI was available only one day per week. (Id.)[1] Plaintiff alleges that each time he went to medical, "medical would say have a seat, check [Plaintiff's] temperature and blood pressure, and say nothing is wrong." (Id.) According to Plaintiff, officers "had been trying to seek medical attention for [him]" since December of 2010, but "each time [Plaintiff] was not given adequate medical attention with the response [being] there was nothing wrong." (Id. at 3-4.)

Although Plaintiff complains generally about the medical care he received at ECI, he specifically complains about the medical care he received on or about May 4, 2011. Plaintiff alleges that on May 4, 2011, he was "lying in the room, weak and unable to move," so the officer on duty called medical, which again indicated there was "nothing they can do." (Id. at 3.) Plaintiff states he passed out and went into a coma with blood sugar "of 900 because of prolonged medical [in]attention." (Id. at 4.) Plaintiff alleges that he had to be rushed to the hospital where he stayed for over a month, four days of which were spent in the Intensive Care Unit ("ICU") where he was "on the verge of dying." (Id.)

---

[1] Plaintiff also complains that he was charged $15.00 per visit to medical, even though policy indicates the price is $5.00 per visit. (Dkt. No. 1 at 3 of 5.)

2

Plaintiff seeks immediate release from the South Carolina Department of Corrections ("SCDC") as well as damages in the amount of $2.5 million dollars. (Id. at 5.) Plaintiff contends that because of the prolonged inattention, his pancreas "has shut down and won't produce any insulin," so he must depend on twice-daily shots of insulin. (Id. at 4.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, both Plaintiff and Defendants have moved for summary judgment. (See Dkt. No. 36; Dkt. No. 37.) The undersigned will consider the arguments in turn.

Plaintiff claims that Defendants have been deliberately indifferent to his serious medical needs. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference

3

claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Evidence Presented by Defendants

Defendants presented the Affidavit of Amy Smith, a Registered Nurse at ECI; Smith stated that Exhibit A to her Affidavit "is a true and accurate copy of the medical records maintained by SCDC reflecting medical treatment rendered to . . . [Plaintiff] from December 2, 2010 to August 8, 2011." (See Smith Aff. ¶¶ 1, 3.) According to Smith, Plaintiff's medical records indicate that he was transferred from KCI to ECI between the dates of December 9, 2010, and December 14, 2010. (Id. ¶ 5.) Smith states that the last medical treatment Plaintiff received at KCI was on December 9, 2010, and the first medical treatment Plaintiff received at ECI was on December 14, 2010. (Id. ¶¶ 6-7.) Nurse Smith's Affidavit further states,

> 8. Inmate Dunbar's Complaint states that, after being transferred to ECI in December 2010, he complained to ECI medical staff that "something was wrong with my body." However, Inmate Dunbar's medical records do not document any complaints in December 2010 or January 2011, until January 28, 2011. . . .

4

> 9. To the contrary, Inmate Dunbar's medical records . . . indicate that on January 20, 2011, he was requesting that medical work restrictions be removed from his classification profile.

(Id. ¶¶ 8-9.)

Nurse Smith indicates in her Affidavit that Plaintiff's medical records reveal he complained on January 28, 2011 "that 'something is tugging at my heart' and admitted to discontinuing his Zantac medication approximately two to three months prior." (Id. ¶ 10.) Smith states that Plaintiff was diagnosed with chest pain with musculoskeletal involvement, treated in accordance with two prior standing orders, and instructed to return to medical for follow-up and to have his blood pressure checked twice daily. (Id.) According to Nurse Smith, Plaintiff expressed at that time that he "did not want to take any medications that might cause a medical hold to be placed on his ability to work." (Id.)

Nurse Smith states that in March of 2011, Plaintiff twice sought medical care and then refused treatment, and on May 2, 2011, Plaintiff "again requested that all restrictions be removed from his health summary." (Id. ¶¶ 11-13.) However, Smith states that Plaintiff's medical records reveal that Plaintiff was brought to the ECI medical department on May 4, 2011, after fainting in the dining room. (Id. ¶ 14.) According to Nurse Smith, Plaintiff was evaluated, and Dr. Lewis ordered 25mg of Phenergan and 10mg of Nubian. (Id.) Shortly thereafter, Dr. Lewis ordered that Plaintiff be transported to the emergency room at Marlboro Park Hospital for further evaluation and treatment. (Id.)

Smith indicates in her Affidavit that Plaintiff was diagnosed with new onset diabetes and pancreatitis on May 5, 2011, and that Plaintiff remained at Marlboro Park Hospital until May 10, 2011, when he was discharged to KCI. (Id. ¶ 15.) Plaintiff was discharged from KCI back to ECI on May 26, 2011, with no signs of diabetic distress, and upon his return to ECI, "Inmate Dunbar was placed on a diabetic diet and ECI medical staff were informed of the

5

various medications ordered by Inmate Dunbar's treating physicians." (Id. ¶ 16.) Nurse Smith describes the care Plaintiff received upon his return to ECI as follows:

> 18. Inmate Dunbar's medical records indicate that from the time he returned to ECI . . . on May 26, 2011 until he was transferred to TCI [(Turbeville Correctional Institution)] on August 11, 2011, his blood sugar was checked twice daily, and his medications were administered in compliance with SCDC physician orders. He was reevaluated on June 2, 2011 . . . , and had no other incidence of diabetic distress. However, Inmate Dunbar refused full doses of diabetic medication on at least one occasion.
>
> 19. Inmate Dunbar's medical records . . . indicate that he received educational instruction on July 2, 2011 regarding the importance of taking his diabetic medications as ordered and maintaining a healthy diet and exercise regimen. The notes . . . indicate that Inmate Dunbar expressed his understanding of the educational information provided.
>
> 20. Inmate Dunbar's medical records . . . further indicate that on July 29, 2011, Inmate Dunbar met with myself and Nurse Spivey regarding multiple issues. The notes . . . indicate that we spent approximately sixty minutes with Inmate Dunbar discussing his multiple concerns, including SCDC medical treatment co-pay policies, timeliness of medical response to his complaints, his desire for transfer, and the likelihood that he will ever be able to discontinue insulin use. Upon completion of this discussion, I was encouraged that Inmate Dunbar understood and was satisfied with the explanations provided.
>
> 21. As stated above, Inmate Dunbar's medical records . . . indicate that he was transferred to TCI on August 11, 2011. Inmate Dunbar has not received any medical treatment from myself, Nurse Fuller, or any other ECI medical staff since that date.

(Id. ¶¶ 18-21.)

Evidence Presented by Plaintiff

In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff attaches numerous documents previously filed in the instant case. For example, Plaintiff filed another copy of his Motion to Compel (Dkt. No. 35) and his Motion "for Summary Judgment and Request of Conference" (Dkt. No. 36) as supporting documents with his Response. (See Dkt. No. 47-1 at 36-38, 43-45 of 68.) Plaintiff's Motion to Compel (Dkt. No.

6

35) was denied on January 12, 2012 (Dkt. No. 50). In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff makes much of the fact that while Smith and Byars responded to Plaintiff's discovery requests, Defendant Fuller did not. (See Dkt. No. 47-1 at 46 of 68.) This argument was addressed in the Order on the Motion to Compel. (See Dkt. No. 50 at 3-4.)

Plaintiff also filed several documents, such as Requests to Staff, that he submitted to Defendants or other SCDC employees *after* he was hospitalized and diagnosed with diabetes. (See, e.g., Dkt. No. 47-1 at 5-9 of 68.) However, Plaintiff's claim for deliberate indifference to serious medical needs relates to the events leading up to his hospital stay. None of these documents indicate that Defendants acted with a sufficiently culpable state of mind to constitute deliberate indifference; none of these documents reveal that Defendants knew Plaintiff had diabetes and refused him appropriate medical care.

Plaintiff also filed portions of his SCDC medical records. (See generally Dkt. No. 47-1.) Although Defendant Smith did not mention this in her Affidavit, the medical records reveal a medical encounter on May 3, 2011. (See Dkt. No. 47-1 at 12 of 68.) The medical record provides as follows (verbatim):

> Inmate into medical with incident report stating that he had been vomiting. Inmate states "I can't really eat anything right now I'm sick on my stomach and I signed up for sick call cause I have not used the bathrm in about a week." Inmate seen in medical with incident report, noted no vomiting but scant cl ear spitting of mucous in trash can. BS present x4, noted hyperactive in upper and lower left quad and hypoactive in right upper and lower quad. Good skin turgor, mucous membranes moist, color wnl.
> Inmate given Phenergan 25mg po per S.O. #28 and I/M aware to repeat Q8HR as needed and to come back to medical if no relief and call to MD will be placed. Inmate aware to have clear liquids for 24hrs. Instructed to come to sick call, otr given to inmate to come back to medical to reeval on 5-4-2011 and get MD appt if needed and not relieved.
> Inmate voiced understanding to all above, able to ambulate out alone and to rtc as needed or if worse. Will ctm.

7

(Dkt. No. 47-1 at 12-13.) According to Plaintiff, on May 3, he "came crawling into medical in severe pain" but was only given "milk of magnessia [sic] . . . and told nothing was wrong." (Dkt. No. 47-1 at 22 of 68.) Plaintiff further states that Ms. Fox and Warden McFadden "witness[ed] . . the Plaintiff" laying on the pavement "foaming from [the] mouth" and unable to walk, but when they called medical, Fuller stated, "He just left out after being seen and he is okay." (Id.) Plaintiff also points to the record of the medical encounter of May 4, 2011; he complains that during the entire ordeal, no one at ECI checked his blood sugar level. (Id. at 13.)

Finally, Plaintiff states that he "had been complaining of pain" since December of 2010 "of heart and chess [sic], including stomach," but "each time [he] was denied and kicked out by Nurse Fuller." (Dkt. No. 47-1 at 22 of 68.) Plaintiff also presents the "Declaration of Terry Cooper," a fellow inmate; Cooper states that he has "diabetic neuropathy" and that Defendant Smith "has denied [him] and other diabetic inmates access to []adequate medical care by not ordering diabetic shoes." (Dkt. No. 47-1 at 60 of 68.) Cooper also states, "I have seen Inmate Dunbar go to medical a few times and he didn't get anything done he is a diabetic also." (Id.)

Analysis

The undersigned recommends granting Defendants' Motion for Summary Judgment (Dkt. No. 37) and denying Plaintiff's Motion for Summary Judgment and Request of Conference (Dkt. No. 36). Certainly what happened to Plaintiff is unfortunate. However, the fact that Plaintiff has been diagnosed with diabetes and will likely require lifelong treatment as a result does not–in and of itself–indicate that any Defendant was deliberately indifferent to Plaintiff's serious medical needs. The instant case is strikingly similar to Knowles v. S.C.D.C., C/A No. 2:09-1921-MBS, 2010 WL 2990157 (D.S.C. July 29, 2010). In Knowles, the plaintiff was seen on the first day for a variety of symptoms; the defendants told the

plaintiff that his symptoms were related to Hepatitis C, prescribed Zantac for his heartburn, instructed him to drink extra fluids, and put the plaintiff on the list to see the doctor the following week. See Knowles, 2010 WL 2990157, at *2. On the second day, one of the defendants received a call from an officer indicating that the plaintiff "was complaining of pain 'all over.'" Id. The defendants noted that the plaintiff had been seen in medical the prior day; the plaintiff alleged the defendants "told him that his symptoms were related to Hepatitis C and that they 'wanted to hear no more of the matter.'" Id. The plaintiff continued to experience pain, and on the third day, an officer called medical to advise that the plaintiff was complaining of abdominal pain and nausea. Id. The officer was told to tell the plaintiff to drink clear liquids and remain on bed rest for the rest of the night. Id. Later that night, the officer made three calls to medical indicating that the plaintiff continued to complain of nausea and vomiting; the officer was instructed to transfer the plaintiff to the infirmary. Id. On the fourth day, the plaintiff was found unconscious in the restroom and was taken to the emergency room. Id. At the hospital, the plaintiff's blood sugar level was measured at 853 and the plaintiff was diagnosed with diabetes. Id. Since the incident, the plaintiff received care for his diabetes. Id.

In concluding the plaintiff's deliberate indifference claim failed, the Court stated,

> It is clear in hindsight that Plaintiff had a serious medical need owing to the onset of diabetes. However, Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his serious medical need. Plaintiff's medical records reveal that he was seen and evaluated by Livesay medical staff, and provided with treatment based upon his symptoms and medical history. Defendants' actions in providing Plaintiff with medical care that they believed appropriate based upon the information available at the time, demonstrate that Defendants did not deliberately ignore Plaintiff's serious medical condition. Because Defendants were not aware that Plaintiff was diabetic, they also did not purposefully deny Plaintiff access to a doctor specializing in diabetes. Therefore, Plaintiff's § 1983 claim must fail.

Id. at *4.

Much like the defendants in Knowles, there is no evidence in the instant case that Defendants knew Plaintiff had diabetes, and knowing that, refused to treat him for diabetes. Although Plaintiff asserts that he "had been complaining of pain" since December of 2010 "of heart and chess [sic], including stomach," (Dkt. No. 47-1 at 22 of 68), the record also reveals that Plaintiff stopped taking his heartburn medication. When Plaintiff was seen on these complaints, he "was diagnosed with chest pain with musculoskeletal involvement, treated in accordance with two prior standing orders, and instructed to return to medical for follow-up and to have his blood pressure checked twice daily." (Smith Aff. ¶ 10.) At that time, Plaintiff indicated that he "did not want to take any medications that might cause a medical hold to be placed on his ability to work." (Id.)

In addition, when he reported to medical on May 3, 2011, and complained that he had been vomiting, he was examined and given twenty-five milligrams of Phenergan. (Dkt. No. 47-1 at 12-13.) Plaintiff was instructed to have clear liquids for twenty-four hours and to come back to medical the following day if there was no relief. (Id.) When he was brought back to medical the following day, Plaintiff was evaluated and treated, and shortly thereafter, Dr. Lewis ordered Plaintiff transported to the emergency room, where he received further care. (See Smith Aff. ¶¶ 14-16; see also Dkt. No. 37-1 at 31-32, 66-72 of 98.) Plaintiff complains that no one checked his sugar at medical on May 4, 2011, but such a failure does not show deliberate indifference in light of the fact that no one knew Plaintiff was diabetic.

The undersigned recommends granting summary judgment to Defendants because there is no genuine issue of material fact regarding whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) ("Johnson's case fails . . . because he has produced no evidence proving the subjective (deliberate

indifference) prong. He has produced no evidence that the doctors subjectively knew about the pituitary tumor and deliberately failed to treat it."); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977) (incorrect diagnosis does not constitute deliberate indifference); Robinson v. Green, No. 2:06-cv-985-RBH, 2007 WL 1447871, at *7 (D.S.C. May 11, 2007) (stating, in rejecting the plaintiff's claim, that "[t]his is not a difficult case," because "the only inference to be drawn from the medical records is that there was nothing to alert the medical staff that he might have diabetes, that diabetes was diagnosed in August 2003, and that he received a plethora of treatment for diabetes including consistent monitoring of his blood sugar levels and diabetes medication throughout the remainder of his detention").[2]

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 37) be GRANTED, and the Plaintiff's Motion for Summary Judgment and Request of Conference (Dkt. No. 36) be DENIED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

June 20, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[2] To the extent Plaintiff seeks to assert a claim against Defendants for alleged failure to follow SCDC policies, that claim fails. The fact that Defendants allegedly failed to follow SCDC policy does not, in itself, amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).